**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**
**FAYETTEVILLE DIVISION**

**LOIS MOORE** **PLAINTIFF**

**VS.** **NO. 5:09-CV-5236-JLH**

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY** **DEFENDANT**

# DEFENDANT'S BRIEF IN SUPPORT OF ITS RESPONSE TO PLAINTIFF'S MOTION TO COMPEL AND MOTION FOR A PROTECTIVE ORDER

State Farm Mutual Automobile Insurance Company ("State Farm") requests that this Court deny Plaintiffs' Motion to Compel as to the Initial Disclosures, Request for Production No. 8, and Interrogatory Nos. 2 & 3. In addition, State Farm moves for the entry of a Protective Order regarding documents responsive to Requests for Production Nos. 3 and 4.

This suit for Underinsured Motorist Coverage ("UIM") benefits arises from a March 6, 2007 automobile accident. Plaintiff initially sued Mr. Benjamin Sharp, the driver of the other vehicle involved in the accident. On May 10, 2007, Plaintiff's attorney first inquired with State Farm as to Plaintiff's UIM coverage and, on May 14, 2007, State Farm responded by confirming the existence of UIM coverage and stating the policy limits of this coverage. The following is a timeline of events following State Farm's confirmation of UIM coverage:

- **May 21, 2009** - Plaintiff's counsel's letter advising a UIM demand ". . . will be forwarded to your office." (Exhibit B)
- **May 26, 2009** – Plaintiff's counsel's letter to State Farm advising ". . . but she (Moore) has authorized me to offer to settle her claim in the amount of the policy limits." (Exhibit C)

- **May 26, 2009** – Plaintiff's counsel's letter serving State Farm with an Amended Complaint naming State Farm Mutual Automobile Insurance Company as a Defendant. (Exhibit D)
- **July 9, 2009** – Plaintiff's counsel's letter dismissing the first lawsuit against State Farm and advising, "I will be refilling the Complaint next week." (Exhibit E)

Because of the short duration of time from when State Farm was given notice of the claim and the time it was sued and because it was not provided the documentation supporting the claim until after suit was filed, no claim decision was made (denial or otherwise) prior to Plaintiff suing State Farm. Plaintiff non-suited the original case on July 9, 2009 and re-filed the current action on October 1, 2009.

## II. Initial Disclosures and Request for Production No. 8

Plaintiff is seeking, as part of State Farm's Initial Disclosures, "a copy of State Farm's investigation into the plaintiff's claim including specifically how they evaluated the contractual claim between State Farm and Lois Moore" as well as "a written basis in relation to the policy and Arkansas law setting forth the basis for the refusal to pay Lois Moore's claim up to this point." Similarly, in Request for Production No. 8, Plaintiff seeks "a copy of the reasonable explanation of the basis in the insurance policy in relation to the facts and applicable law for the denial of Lois Moore's UIM claim." In addition, Plaintiff is also seeking, as part of State Farm's Initial Disclosures, "a copy of the computation for damages State Farm produced for Lois Moore that was used in deciding she was fully compensated by her third party settlement." Plaintiff's Motion to Compel further responses to these requests should be denied.

First, Plaintiff's Motion to Compel should be denied because the information requested as part of State Farm's Initial Disclosures is not encompassed in the Initial Disclosure

requirements set forth in Federal Rule of Civil Procedure 26(a)(1)(A). Under this rule, a party must provide the following without awaiting a discovery request: (1) the identity of individuals "likely to have discoverable information-along with the subjects of that information- that the disclosing party may use to support its claims or defenses;" (2) a copy or description of all documents that the disclosing part "may use to support its claims or defenses," (3) "a computation of each category of damages claimed by the *disclosing* party;" and (4) a copy of any applicable insurance agreement. Fed. R. Civ. P. 26(a)(1)(A) (emphasis added). None of these categories of disclosure requires State Farm to produce, to the extent the items requested exist, "a copy if its investigation," a "written basis in relation to the policy and Arkansas law setting forth the basis for the refusal to pay," or State Farm's computation of Plaintiff's damages. Thus, in this regard, the request is improper and Plaintiff should be required to seek this information in Interrogatories and Requests for Production rather than as part of the Initial Disclosures.

Second, State Farm has already produced a copy of its claim file, including the activity log, which documents the pre-suit activity (including investigative actions) of State Farm relative to Plaintiff's underinsured motorist coverage claim. To the extent that there is a non-privileged "copy of State Farm's investigation," this would be reflected in the claim file already produced.

Third, State Farm has responded to these requests, particularly Request for Production No. 8, by stating that it did not deny Plaintiff's UIM claim. As discussed above, only two days passed between the date Plaintiff put State Farm on notice of the settlement with the alleged tortfeasor that would give rise to a potential UIM claim and the date Plaintiff sued State Farm for UIM benefits. It was only subsequent to suing State Farm that Plaintiff provided any of the necessary documentation to make a UIM claim. Because of this, State Farm did not have time, prior to being made a legal adversary to its insured, to make a decision on Plaintiff's UIM claim.

Any investigation/analysis/computation of damages performed by State Farm subsequent to being sued by Plaintiff was, by necessity, "prepared in anticipation of litigation or for trial," and contained "the mental impressions, conclusions, opinions, or legal theories" of the attorney retained by State Farm to defend it in the litigation such that it is not discoverable pursuant to Federal Rule of Civil Procedure 26(b)(3).

Fourth, Plaintiff's counsel took the deposition of State Farm Claims Representative Linda Thomas on September 29, 2010, the individual who was admittedly responsible for investigating and analyzing Plaintiff's claim. Ms. Thomas testified she was in the process of evaluating the claim when Plaintiff sued State Farm and, thereafter, the process was turned over to her defense attorney. (When the transcript has been received from Ms. Thomas' deposition, the record will be supplemented.)

Plaintiff hinges the relevance of the information sought on Arkansas Code Annotated Section 23-66-206, which defines certain actions on the part of insurers, when committed with "such frequency as to indicate a general business practice," as "unfair claims settlement practices." Included in these unfair claims settlement practices is the language upon which a portion of Plaintiff's requests are based (i.e. "[f]ailing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts of applicable law for denial of a claim or for the offer of a compromise settlement"). *See* Ark. Code Ann. § 23-66-206(13)(J). The problem with this position is that, in this case, no claims decision (whether a settlement/denial or otherwise) was or could have been made prior to suit being filed which placed State Farm and its insured in an adversary position. Because suit was filed prior to State Farm being able to investigate Plaintiff's UIM claim and make a decision as to whether to deny the claim/make a settlement offer, the investigation process became intertwined with the

litigation process rather than the claims handling process regulated by the Unfair Claims Settlement Practices Act.

Because suit was filed prior to State Farm being able to make a settlement offer on Plaintiff's UIM claim or being able to deny the claim, Arkansas Code Annotated Section 23-66-206 is inapplicable. Any investigation as to Plaintiff's UIM claim or conclusions drawn from this investigation were, by necessity, subsequent to suit and thus protected from disclosure by Federal Rule of Civil Procedure 26. Therefore, State Farm requests that Plaintiff's Request for an Order compelling it to provide a written basis in relation to the policy and Arkansas law for its alleged denial of Plaintiff's claim and/or for its computation of Plaintiff's damages be denied. State Farm cannot respond to this request because it did not deny Plaintiff's claim. Likewise, State Farm requests that Plaintiff's request for an order compelling disclosure of any computation of Plaintiff's alleged damages be denied because any computation of this sort would have occurred post-suit and would, therefore, be protected work product and information prepared in anticipation of litigation.

## III. Interrogatory Nos. 2 and 3

In Interrogatory No. 2, Plaintiff sought "a detailed description of what actions each individual" that had any contact or dealing with the Plaintiff's UIM claim "did in relation to the plaintiff's file up until the date the defendant refused to honor Lois Moore's demand to State Farm." In Interrogatory No. 3, Plaintiff sought "a detailed description of the investigation the defendant undertook when weighing the plaintiff's first party claims." State Farm objected on the grounds that the Interrogatory was overly broad and unduly burdensome. In addition, State Farm objected to the extent the requests are predicated on State Farm having refused to honor Plaintiff's demand. Without waiving these objections, State Farm referred Plaintiff to the claim

file produced. This response was proper pursuant to Federal Rule of Civil Procedure 33(d) and, therefore, Plaintiff's Motion to Compel regarding these Interrogatories should be denied.

Pursuant to Federal Rule of Civil Procedure 33(d), "[i]f the answer to an interrogatory may be determined by examining" the responding "party's business records (including electronically stored information), and if the burden of deriving or ascertaining the answer will be substantially the same for either party, the responding party may answer by: (1) specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and indentify them as readily as the responding party could; and (2) giving the interrogating party a reasonable opportunity to examine and audit the records."

In the present case, a description of the actions of individuals at State Farm involved in Plaintiff's claim and a description of the pre-suit investigation State Farm undertook regarding Plaintiff's claim can be determined by examining State Farm's claim file, including specifically the Activity Log found at Bates Stamp Nos. SFMAA 0001-0042 and the correspondence between Plaintiff and State Farm produced in discovery. Because of this, State Farm's response to these Interrogatories refers Plaintiff to the claim file produced.

Plaintiff, in arguing the insufficiency of this response, states that she is "seeking discovery as to who did what in regards to handling the UIM claim so that counsel can depose the correct adjustors and not unduly waste the Plaintiff's resources." Plaintiff argues that she can either depose all 56 employees listed or "take a wild guess at who may have been a person who actually worked on the file and made decisions and who may have just gathered paperwork." Plaintiff's asks "[w]hat actions were" taken and "[w]ho conducted" these actions. Plaintiff also asks which portions of the activity log and correspondence are responsive to her requests.

First, because Plaintiff is seeking a description of the activities of all persons involved in the claim and the entire investigation of State Farm, all 42 pages of the activity log and all correspondence produced as part of the claim file are responsive to this request.

Second, the information contained in the activity log and correspondence provides responses to Plaintiff's additional questions (i.e. what actions were taken by whom and what individuals made pre-suit decisions, if any, as opposed to gathering paperwork). Each activity log entry provides the identity of the employee involved, the date of the activity, and a written description of the activity that took place. For example, a review of activity log number 133, reveals the following: on May 19, 2009, State Farm employee Gene Leigton reviewed a letter from Plaintiff's attorney advising that he had settled Plaintiff's bodily injury claim with the alleged tortfeasor's insurance carrier for policy limits and requesting State Farm's approval of the settlement. *See* Bates Stamp No. SFMAA 0029, attached hereto as Ex. A. On that same day, Mr. Leighten called Plaintiff's attorney and left a message seeking to confirm the amount of settlement, the total amount of incurred medical bills, and whether the attorney intended to file a UIM claim. Ex. A. Thus, as revealed by this example, the activity log entries explain State Farm's activities as a result of the claim, who performed these activities, and when these activities were performed. The burden of Plaintiff in reviewing the claim file to derive this information would be the same as the burden on State Farm if it were to review the claim file and recreate a description of its activities throughout the claim. Therefore, referring Plaintiff to the claim file in response to Interrogatory Nos. 2 and 3 was proper pursuant to Federal Rule of Civil Procedure 33, any supplemental response would be cumulative to the information set forth in the claim file, and Plaintiff's Motion to Compel supplemental responses to these two discovery requests should be denied.

**IV. Requests for Production Nos. 3 and 4: Training Documents**

State Farm requests that this Court enter a Protective Order with regard to the materials sought by Requests for Production Nos. 3 and 4.

Pursuant to Fed. R. Civ. P. 26(c), a party may move, after in good faith conferring with opposing counsel, and for good cause shown, for an order "that a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way." Fed. R. Civ. P. 26(c)(7).

In Request for Production No. 3, Plaintiff sought "a copy of all written, audio, video or any other materials used to train adjusters on how to negotiate settlement of a claim or how to handle UIM claims. *See* Plaintiff's Ex. A. In Request for Production No. 4, Plaintiff sought "a copy of all written training materials that dictate the defendant's policies regarding the investigation of all first party claims." *See* Plaintiff's Ex. A.

State Farm objected to both requests, noting that they were overbroad and unlimited as to time/scope and that they sought confidential information protected by trade secret. *See* Plaintiff's Ex. A. Without waiving these objections, State Farm stated it would supplement these responses with the understanding and agreement that any documents produced would be privileged and confidential and subject to a protective order. *See* Plaintiff's Ex. A.

In response to Plaintiff's letter requesting, in part, that State Farm supplement its responses to these Requests for Production, State Farm again offered to supplement its response to these Requests for Production pursuant to a protective order. In a good faith effort to reach an agreement without court involvement, State Farm submitted to Plaintiff a proposed Protective Order and stated that, if they could reach an agreement regarding the protective order, it would

supplement its response to both Requests for Production. *See* Plaintiff's Ex. C and Proposed Protective Order attached hereto as Ex. B.

The proposed Protective Order allowed State Farm to designate material produced and/or deposition testimony as "Confidential" if it believed the material contained or reflected its trade secrets and/or other confidential or proprietary information. Ex. B. The proposed Protective Order stated that Plaintiff could only used confidential material "for purposes of preparing for and conducting pretrial and trial proceedings in this action." Ex. B. It allowed Plaintiff's counsel to disclose the material to: (1) Plaintiff's counsel's employees, independent contractors, experts, and consultants required to assist in the preparation or conduct of the action; and (2) persons whose depositions were being taken or who were to serve as witnesses. Ex. B. It required that those shown the material be given a copy of the Protective Order and be advised that they are bound by it. It also allowed the material to be disclosed to the Court, jurors, and those "lawfully present in the Court proceeding." Ex. B.

The proposed Protective Order also required Plaintiff to give State Farm 10 business days' notice of its intention to file the "Confidential" material such that State Farm could move for a permanent or temporary sealing order under Federal Rule of Civil Procedure 26(c). Ex. B. It precluded Plaintiff from filing the material until the court disposed of the sealing motion "unless Plaintiff's rights [would] be prejudiced by the delay, in which case Plaintiff [could] file such 'Confidential' Discovery Material under seal" pending resolution of the sealing motion. It also required Plaintiff not to oppose a sealing motion under 26(c). Ex. B. As an alternative, the Plaintiff could have unrestricted use of the material in connection with motions, hearings, trial, or other communications with the Court if the material was treated as confidential and filed by the Plaintiff under seal. Ex. B. The proposed Protective Order also required that, upon

conclusion of the action, the confidential material be returned to State Farm and that the Plaintiff provide an affidavit of compliance. Ex. B.

Rather than agree to this Protective Order (which seeks to limit the disclosure/use of State Farm's proprietary training materials while at the same time allowing Plaintiff use of the material for purposes of this litigation), Plaintiff has filed this Motion to Compel. Because the training materials sought by Plaintiff in Requests for Production Nos. 3 and 4 are confidential trade secrets of State Farm, State Farm requests that Plaintiff's Motion to Compel be denied and that this Court enter a Protective Order that would provide the protection to the confidentiality of the documents set forth in the proposed Protective Order.

There is good cause for the entry of a Protective Order because the documents sought by Requests for Production Nos. 3 and 4 contain trade secrets and confidential research of State Farm. *See* Affidavit of Jerri Golden attached as Ex. C. These training documents were "created for the exclusive use of State Farms claims personnel." Ex. C. The creation, updating, and evaluation of the training material sought by these discovery requests is "an ongoing and continuous process which draws heavily upon the resources of State Farm" and is an "expensive, time consuming" process that "requires the input of numerous highly qualified claims and legal personnel." Ex. C.

That the training materials sought by State Farm are confidential and contain trade secrets derives from the fact that State Farm "develops its own industry policies rather than using standard Insurance Service office forms" and "develops much of its own training and resource materials which it prepares and intends for the exclusive use of its claim personnel." Ex. C. State Farm considers the training materials "a form of intellectual property that is unique to State Farm" and, if the material was disseminated to competitors of State Farm those competitors

"would receive the benefit of thousands of hours of State Farm's work product which would give competitors an unfair advantage." Ex. C. It is State Farm's policy to treat the training materials sought by these discovery requests as "proprietary and confidential" and it is its policy to only produce this material subject to a protective order. Ex. C. As evidence that State Farm treats these training materials as confidential, State Farm takes steps to ensure that employees do not disseminate the training materials including requiring its employees to annually sign a Code of Conduct that states that "State Farm employees must protect State Farm's assets from unauthorized and improper use" and that "manuals and other materials developed for business use" are confidential and proprietary matters that "must be safeguarded from unauthorized disclosure" and returned to State Farm "upon request" or when an employee leaves State Farm. Ex. C.

Thus, the training materials sought in the Requests for Production at issue, including State Farm's Auto Claim Representative School, Auto Claim Processor School, Auto Claim Management Course, Auto Policy Training, and First Party Coverage Seminar are unique to State Farm, contain trade secrets, and are privileged/confidential. Ex. C. Because of this, State Farm moves for the entry of a Protective Order with the protections set forth in the proposed Protective Order attached as Exhibit B that covers all training documents it produces in response to Request for Production Nos. 3 and 4.

Respectfully submitted,

HUCKABAY,MUNSON,ROWLETT & MOORE
1900 Regions Center
400 West Capitol Avenue
Little Rock, Arkansas 72201
(501) 374-6535

By: /s/ JOHN E. MOORE
SARAH E. GREENWOOD, ABN 2003089
JOHN E. MOORE, BAR # 82111
john.moore@hmrmlaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on the 5th day of October, 2010, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which shall send notification of such filing to the following:

Mr. Bill G. Horton
Nolan, Caddell & Reynolds
5434 Walsh Lane
Rogers, AR 72758

/s/ JOHN E. MOORE